The next matter, number 25-1248, James Whittemore v. Cigna Health and Life Insurance Company. At this time, would counsel for the appellant please come to the podium and introduce herself on the record to begin? May it please the court. My name is Anna Prakash and I represent the appellant, Jamie Whitmore. I'd like to reserve two minutes for rebuttal, please. You may. Thank you. Obesity is a physiological impairment. To categorically hold that it is not physiological would be at odds not only with Ms. Whitmore's allegations in this case, but also with the overwhelming scientific and medical consensus. But do we have to get there? Do we have to hold that? You do not have to make a categorical determination. However, this case was dismissed because- When you say it's an impairment, are you simultaneously saying that it's automatically a disability? I am not. Okay. So a disability is a physical or psychological impairment that substantially limits one or more major life activities. On the question of impairment, so this first part of the definition of disability, I am saying that obesity is an impairment because it is physiological. And that is the focus of the district court's decision dismissing this case, that obesity is not a disability, and my opponent goes farther to say that it is not even physiological. But obesity is physiological. And this court, this circuit has held in Cook, has recognized that the question of whether obesity is physiological is necessarily fact-bound. Cook seems distinguishable to me. It was confined to morbid obesity for one. Do you see that as a distinguishing characteristic of Cook? I do not, Your Honor, and here's why.  So morbid obesity, the term morbid obesity, is not generally used in the medical community today. But the idea that something is morbid, that there is morbid obesity, that is a question of severity. It's like saying you're a little bit overweight to the point where you're now obese. Maybe you're slightly obese or you're morbidly obese, if that term were to be used. And severity matters in this context because, as we have alleged, when obesity gets to the point, when it becomes so severe as to require medically necessary prescription medication, then it is at the point of substantially limiting one's major life activities. And so, yes, the Cook plaintiff had what was called morbid obesity at the time, but that's really just characterizing obesity as particularly severe. And what I think is notable about Cook is that the plaintiff's expert in that case, in testifying about why that obesity was physiological, talked about how it involves dysfunction of both the metabolic system and neurological appetite-suppressing signal system, capable of causing adverse effects in the musculoskeletal, respiratory, and cardiovascular systems. That is what Ms. Whitmore has alleged with respect to obesity here. That is what, 32 years later, after Cook, the scientific and medical community has come to a consensus on, that that type of definition is synonymous with obesity. So, there are other circuits that have addressed this, not in the context of the Affordable Care Act, but in the context of the ADA or Rehabilitation Act. I submit that those cases are distinguishable and wrong. I guess I'm not really, I understand these arguments, but the district court said that the substantial limitations your client alleged in the complaint are conclusory, and so the complaint must be dismissed. That's really what we're focusing in on, and her complaint says, her obesity substantially limits her walking, standing, and sleeping when compared with most people in the population. That's what you're, I think, that's what we have to wrestle with. Does that meet the motion-to-dismiss standard of plausibility or not? How do you address that argument? First, that she has alleged two main ways in which obesity substantially limits her. One are the major life activities that you pointed out, of walking, standing, and sleeping. The other is what obesity does to a body. When it gets to the point of requiring this medication, it is impacting the endocrine system, the musculoskeletal system, the cardiovascular system, and those are major body functions that are recognized as major life activities. So where there is abnormal cell growth, where there are changes at the hormonal level, where appetite regulation is somehow flawed because of this condition of obesity, that is substantially limiting major life activities, specifically those. Are you conceding that walking, standing, and sleeping is too conclusory? I am not. Walking, standing, and sleeping by itself, I think, passes muster under the amended ADA. I think the court thought that just walking, standing, and sleeping was too much of a generality. That is what the district court held, and I disagree for two reasons. One is that walking, standing, and sleeping by itself, I would submit, under the amended ADA and the standard that substantially limits is not meant to be demanding, where Ms. Whitmore has also alleged that those things are more limited for her than for the general population. That's one. The other reason I disagree with the district court is because the district court disregarded all of the facts that we have alleged regarding what obesity does, including what it does to sleeping, for example. But those are general facts that don't apply to your client. Respectfully, Your Honor, we have alleged that they do apply to our client. So specifically, we have alleged that, with respect to Ms. Whitmore, that it is true for all individuals. In the section talking about her, it is true for all individuals that obesity substantially limits major bodily functions, and that's alleged at paragraph 102 or page 27 of the joint appendix, where it talks about Ms. Whitmore being diagnosed with obesity, with Ms. Whitmore's physician deciding that she needed this prescription medication, and that in coming to the conclusion on whether to prescribe medication, whether to even diagnose somebody as obese, a physician goes through the steps of determining the impacts of weight on that person's functionality and quality of life. It is not a standard BMI and therefore you are disabled type analysis, nor is it an analysis of just because you have a diagnosis, you have a disability. But rather, when it gets to the point where it is so severe as to require medication, as Ms. Whitmore's obesity is here, when it gets to that point, then it substantially limits major life activities. And there are examples, which I am happy to get to. Thank you. One minute. One second. There are two cases down today, so forgive me if I'm getting them confused. Is there another plan that the insurer makes available that would cover the medication but is not available to your client because her employer doesn't make that plan available? There may be. I do not know the answer for certainty. That is certainly something we could inquire into in discovery. But I would say that it does not matter in this instance because this is an Affordable Care Act case, and the Affordable Care Act makes it illegal to design a benefit plan that is discriminatory. Thank you. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record to begin? May it please the court, my name is Richard Nicholson, and I represent Appellee Cigna Health and Life Insurance Company, which I'll refer to as Cigna. The crux of this appeal is appellant's allegation that being diagnosed with obesity and obtaining a prescription for a GLP-1 drug like Ozembic or Wegovy or ZepBound is enough to show, one, appellant is legally disabled, and two, as a result, the exclusion for weight loss drugs and appellant's prescription drug plan discriminated against disabled people. Well, she just said that's not what she's saying. She's saying that she's been diagnosed with obesity that impacts a major life activity, walking, standing, sleeping, and that there are physiological components of it. So she's not just saying what you just said she's saying. Judge Thompson, you're right. She alleged two categories, I think, as my friend just said. One was the walking, standing, and sleeping, and the other was, and I think I just want to make sure I get the quote right, when a medical professional diagnoses obesity and prescribes ongoing medically necessary medications to treat it, obesity has reached the point of substantially limiting major life activities, as I think is what my friend just said. So on the first point, and I think it was Judge Montecalvo who said, the allegations of walking, standing, and sleeping are conclusory. And the reason they're conclusory is because they don't explain how they substantially limit the plaintiff. If you look at cases like the Shine case, which plaintiff relies on, or the cases we cite, like Davis and Lopez-Santiago, really you need to plead, and I think counsel said this also, it was degree. You need to show that your impairment substantially limits how it limits you. And here plaintiff didn't do that. We don't know from the allegations in the complaint if Appellant has an injury from the obesity, whether it actually affects her sleeping, does she have sleep apnea, we don't know. And the cases are clear that the type of allegations that Appellant offered are not enough. I think the second allegation, and I think Appellant's trying to distinguish between a BMI and then a holistic diagnosis, if you look at the allegations in the complaint, and I think it's 49 to 51, and that's a JA-17, really the only objective criteria that Appellant offers to diagnose obesity is a BMI of 30. And a BMI of 30 is basically your height and your weight, you plug it into a calculator, and it will say what that number is. And if you look at the diagnostic criteria for these drugs, and then these are in Cigna's clinical guidelines and in the FDA guidelines, which are at JA-42 and 43, it makes clear to get the prescription for these drugs, all you need is a BMI of 30 if you are obese. Or even if you have a BMI of 27, which would mean you are not obese, and you have a comorbidity like hypertension or insulin resistance. So really what Appellant is arguing is that a BMI of 30 is enough to show that you have a substantially limiting impairment. Well, I thought she was arguing that her personal physician made an independent determination that she has obesity that impacts her life activities. I think it was Judge Maldacavo earlier who said that the allegations offered in the complaint were general, that anybody diagnosed with obesity would have this happening to them, that they would have this damage. The Appellant here did not allege that for her. She didn't say that her cardiovascular system was affected. She didn't allege that she's had kidney issues. She hasn't alleged any injury to herself from her obesity. I think her response was, but I alleged all people with obesity have all of those impairments, and so that makes it specific to me. Respectfully, with respect to my colleague, I don't think that's a plausible allegation, and I don't think the district court found it was a plausible allegation either, because at the end of the day, a BMI of 30, if you type in a heightened weight into the calculator, is about 30 to 40 pounds overweight. Respectfully, we probably know people like that. We may be a person like that. You cannot conclude that that necessarily means that you have suffered substantial damage to your internal organs or your internal bodily systems without some sort of additional factual, plausible allegations that you've been injured. And Appellant here did not do that in the complaint, and that's what the district court found on the substantially limiting factor. Just to address the impairment issue, I think, Judge Maltecalpo, you said that Cook's distinguishable. That's exactly right. Cook was a deferential review of a jury award where the jury actually didn't even answer the question of whether obesity had a physiological cause or was a disorder. And every court since then, four other circuit courts, which we cite in our papers, have all answered that question in the negative, that obesity itself is not an impairment. But a plaintiff may show that their obesity has a physiological cause, but not that all obesity is a physiological cause. And I think the case law is unanimous on that, and Appellant doesn't cite any case that reads Cook the way that she does, that somehow this court has found that obesity alone is an impairment. And then, Judge Thompson, I think you asked earlier about whether this was the case where the plan ultimately – there was another plan where the plaintiff could have been covered. So I think that's the other case. But for this case, under Cigna's clinical guidelines, basically Cigna says these drugs may be medically necessary in two circumstances, when there's a BMI of 27 and there's a comorbidity, like I mentioned earlier, hypertension or glucose intolerance, and others, and a BMI of 30. But ultimately, it's a plan sponsor's choice on whether or not they're going to cover these drugs, because for most employer-sponsored health plans, ultimately the plan administrator, the employer, determines what the benefits are going to be. So while Cigna will cover this drug and does cover this drug for many plans, Appellant's plan sponsor, the University of Maine system, made a decision not to cover that here. And I think as the district court in Holland found, that goes to whether this is intentional discrimination or not. And it's clear that if Cigna believes that this can be medically necessary and will cover it, but ultimately it's a plan sponsor's choice, it doesn't provide a plausible inference that Cigna has been intentionally discriminating. Well, is it the plan sponsor's discrimination, and does she have the wrong party? I would submit that it's not discrimination, but ultimately it is the plan sponsor's choice. I guess I just don't understand when Affordable Care says you can't discriminate in a health plan if this is discriminatory, what does that mean? Does it mean that every health plan must cover everything? Well, that's what the Ninth Circuit in Schmidt basically said, no, it doesn't. That doesn't mean that the Affordable Care Act means you have to cover everything. But what it requires is to look at the exclusion and to kind of come up with a theory of discrimination showing that, and I think Appellant argued intentional discrimination and proxy discrimination, disparate impact, that shows that the exclusion kind of predominantly affects disabled people. And here Appellant hasn't offered any facts showing that on the discrimination point, that this exclusion, which on its face is facially neutral, and can also apply to non-obese people, people with a BMI of 27, and it sounds like Appellant is saying not every person with a BMI over 30 is disabled. And if that's true, it means that there's a category of people who are eligible for the drug, who may be obese, who are not disabled, who are eligible for the drug. And then there's maybe a third category of people who have a BMI, probably over 30, who may be disabled. So those kind of three categories show here that the exclusion does not predominantly affect disabled people, which it needs to show to show disability discrimination. And just kind of on the point here that my friend raised, that the ACA may somehow change the analysis, the two circuit courts that have addressed that issue, the Sixth and the Ninth, both said that the ACA, that Section 1557 does not create a new healthcare-specific discrimination standard. Instead, it explicitly adopts the underlying enforcement mechanisms of the underlying statute. So here would be the ADA and the Rehabilitation Act. So that doesn't really move the needle at all. So in sum, four circuit courts have rejected Appellant's claim that obesity is an impairment. This court has rejected a diagnosis and a prescription that is enough to show an impairment substantially limits major-like activities. And that's the Carreras case we cite in our papers. In that case there, this court was clear that just a diagnosis and medication alone are not enough to show an impairment. And Appellant hasn't shown the exclusion here predominantly affects disabled members of the plan and is discriminatory. So for these three reasons, the district court can be affirmed. Thank you. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce herself on the record? She has a two-minute rebuttal. Anna Prakash for Appellant Jamie Whitmore. So first, the Affordable Care Act does not wholesale adopt the Rehabilitation Act and the ADA. Rather just the grounds and enforcement mechanisms. But it is crystal clear that benefit design discrimination is illegal. And sure, insurance companies have lots of choices that they can make that are within the law. But they don't have unfettered discretion to categorically deny coverage based on a health condition or disability status. With respect to disability status here. So there are cases where the level of treatment has been shown to push the disability or the impairment rather over the edge of being merely an impairment and into the category of disability. For example, in the Arroyo Ruiz case, the court found that the fact that this patient, plaintiff, was on dialysis indicated that the endocrine functioning and the waste elimination system was not working the way it should. That is substantially limited. In the Shine case that my friend talked about, there were two plaintiffs, a mother and a child. The mother simply alleged that she had breathing problems. The child alleged that he had breathing problems sufficient enough to require a breathing machine. And because in that case there was a breathing machine for a child, that intervention, that medical intervention, that was found sufficient to state substantial limitation for the child, not for the mother who did not require that same medical intervention. And finally, on the question of BMI, this is not just about BMI. This is about the clinical effects of weight that a physician comes to a determination on, as we have alleged, in then deciding that their patient should be prescribed this medically necessary treatment. Thank you. Thank you, counsel. That concludes argument in this case.